UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

08 CV 0351 *M*

JOHN D. JUSTICE, and on behalf of all
parolees similarly situated,
    Plaintiffs,

       --against--

TERRY KING, SAVING GRACE MINISTRIES, INC.,
EUGENIO RUSSI, KEN WILSON, CHARLES SEARS,
TOM TORTORA, RICHARD MIRAGLIA, KC SHARMA,
BRENDA MARTIN, DR. ARVIND SAMANT,
KIM KARALUS, and DR. JEFFREY GRACE,
    Defendants.

VERIFIED COMPLAINT

JURY TRIAL DEMANDED

## STATEMENT OF JURISDICTION

This is a civil action seeking relief and/or damages to defend and
protect the rights guaranteed by the Constitution of the United
States. This action is brought pursuant to 42 USC §1983, §1985 and the
provisions of the Racketeer Influenced Corrupt Organizations Act under
18 USC §1964(c). The Court has jurisdiction over the action pursuant
to 28 USC §1331, §1332, §1337, §1343(3), §1343(4), and §2201, the
principles of diversity and pendent jurisdiction, and the laws of the
State of New York. Venue is based upon 28 USC §1331, the principles of
diversity and pendent venue, the provisions of the Racketeer
Influenced Corrupt Organizations Act 18 USC §1961 et seq.,
18 USC §1965(a), and the laws of the State of New York.

## PARTIES TO THIS ACTION

A. Plaintiff's Information

    Name and Prisoner Number of Plaintiff:
        John D. Justice
        Department Identification Number (DIN) 87B0385

Present Place of Confinement and Address:
        Great Meadow Correctional Facility
        Box 51
        Comstock, New York   12821-0051

B. Defendant's Information:

    1. Name of Defendant:
        Terry King

       Official Position of Defendant:
        Executive Director, Saving Grace Ministries, Inc.

       Defendant is Sued in Individual Capacity $a_n l$ Official Capacity

       Address of Defendant:
        1932 Bailey Avenue          PO Box 1013
        Buffalo, New York   14211     Williamsville, New York 14231
        (place of employment)        (place of employment)

    2. Name of Defendant:
        Saving Grace Ministries, Inc.

       Official Position of Defendant:
        Non-profit corporation contracting to provide services
        for the State of New York

       Defendant is Sued in Individual and Official Capacity

       Address of Defendant:
        1932 Bailey Avenue          PO Box 1013
        Buffalo, New York   14211     Williamsville, New York 14231
        (Corporate Headquarters)     (mailing address)

    3. Name of Defendant:
        Eugenio Russi

       Official Position of Defendant:
        Regional Supervisor, Area V, New York State Division of Parole

       Defendant is Sued in Individual Capacity $a_n l$ Official Capacity

       Address of Defendant:
        New York State Division of Parole
        Buffalo Office
        460 Main Street
        Buffalo, New York   14203   (place of employment)

3

4. Name of Defendant:
   Ken Wilson

   Official Position of Defendant:
   Parole Officer, New York State Division of Parole

   Defendant is Sued in Individual Capacity and official Capacity

   Address of Defendant:
   New York State Division of Parole
   Buffalo Office
   460 Main Street
   Buffalo, New York  14203  (place of employment)

5. Name of Defendant:
   Charles Sears

   Official Position of Defendant:
   Parole Officer, New York State Division of Parole

   Defendant is Sued in Individual Capacity and Official Capacity

   Address  of Defendant:
   New York State Division of Parole
   Buffalo Office
   460 Main Street
   Buffalo, New York  14203  (place of employment)

6. Name of Defendant:
   Tom Tortora

   Official Position of Defendant:
   Chief, Program Services Department, New York State
   Division of Parole

   Defendant is Sued in Individual Capacity and Official Capacity

   Address of Defendant:
   New York State Division of Parole
   Buffalo Office
   460 Main Street
   Buffalo, New York  14203
       (place of employment)

   New York State Division of Parole
   Central Office
   97 Central Avenue
   Albany, New York  12206 (place of employment)

4

7. Name of Defendant:
   Richard Miraglia

   Official Position of Defendant:
   Associate Commissioner, New York State Office of Mental Health

   Defendant is Sued in Individual Capacity and official Capacity

   Address of Defendant:
   New York State Office of Mental Health
   44 Holland Avenue
   Albany, New York  12229 (place of employment)

8. Name of Defendant:
   KC Sharma

   Official Position of Defendant:
   Forensic Manager, Buffalo Psychiatric Center

   Defendant is Sued in Individual Capacity and Official Capacity

   Address of Defendant:
   Buffalo Psychiatric Center
   400 Forest Avenue
   Buffalo, New York 14213 (place of employment)

9. Name of Defendant:
   Brenda Martin

   Official Position of Defendant:
   Program Director, Butler Clinic

   Defendant is Sued in Individual Capacity and official Capacity

   Address of Defendant:
   Butler Clinic
   Buffalo Psychiatric Center
   400 Forest Avenue
   Buffalo, New York 14213 (place of employment)

10. Name of Defendant:
    Dr. Arvind Samant

    Official Position of Defendant:
    Psychiatrist, Butler Clinic

    Defendant is Sued in Individual Capacity and Official Capacity

    Address of Defendant:
    Butler Clinic
    Buffalo Psychiatric Center
    400 Forest Avenue
    Buffalo, New York  14213 (place of employment)

5

11. Name of Defendant:
    Kim Karalus

    Official Position of Defendant:
    Supervisor, Butler Clinic

    Defendant is Sued in Individual Capacity and Offical Capacity

    Address of Defendant:
    Butler Clinic
    Buffalo Psychiatric Center
    400 Forest Avenue
    Buffalo, New York  14213  (place of employment)

12. Name of Defendant:
    Dr. Jeffrey Grace

    Official Position of Defendant:
    Clinical Director, Buffalo Psychiatric Center

    Defendant is Sued in Individual Capacity and Official Capacity

    Address of Defendant:
    Buffalo Psychiatric Center
    400 Forest Avenue
    Buffalo, New York  14213 (place of employment)

P R E V I O U S   L A W S U I T S   I N   S T A T E   A N D   F E D E R A L
C O U R T

A. Have you begun any other lawsuits in state or federal court dealing
with the same facts involved in this action?

                    YES

I.   1. Names of the parties to this other lawsuit:

     Plaintiff: John D. Justice

     Defendants: Michael Hogan, PhD, Commissioner of the New York
                 State Office of Mental Health; Frank Clark,
                 Erie County District Attorney

     2. Court: State Supreme Court, Erie County

     3. Index Number: I-2007-9721

     4. Name of Judge to whom case was assigned: Hon. M. William Boller

5. Approximate Date Action was Filed: September, 2007

6. What was the disposition of the case?
     Still pending?   YES

   Disposition: Judgement after trial for the defendants.

II.  1. Names of the parties to this other lawsuit:

     Plaintiff: John D. Justice, People of the State of New York

     Defendants: Donald Livingston, Superintendent, Erie County
                 Holding Center; Robert Dennison, Chairman of the
                 New York State Division of Parole; Thomas Dodson,
                 Director, Buffalo Psychiatric Center

2. Court: State Supreme Court, Erie County

3. Index Number: I-2007-1543

4. Name of Judge to whom case was assigned: Hon. Russell P. Buscaglia

5. Approximate Date Action was Filed: January, 2007

6. What was the dispostion of the case?
     Still pending?   YES

   Disposition: Dismissed by court for failure to exhaust
                administrative remedies.

III. 1. Names of the parties to this other lawsuit:

     Plaintiff: John D. Justice

     Defendants: None  Civil matter that was initiated by the Court,
                 sua sponte, pursuant to Criminal Procedure Law
                 §330.20

2. Court: State Supreme Court, Erie County

3. Docket Number: No docket or index number given at the lower
                  court level

4. Name of Judge to whom case was assigned: Hon. Russell P. Buscaglia

5. Approximate Date Action was Filed: No filing was done; sua
     sponte action by the Court. Hearing was held on July 9,
     2007.

7

6. What was the disposition of the case?
    Still pending?   YES

   Disposition: Motion to dismiss Order of Conditions, pursuant to
                Criminal Procedure Law §330.20, denied. Order of
                contempt not entered against the New York State Office
                of Mental Health.

IV.   1. Names of parties to this other lawsuit:

       Plaintiff: John D. Justice

       Defendant: George B. Alexander, Chairman of the New York State
              Division of Parole

   2. Court: State Supreme Court, Albany County

   3. Index Number: 8503-07

   4. Name of Judge to whom case was assigned: Hon. Roger D. Mc Donough

   5. Approximate Date Action was Filed: October, 2007

   6. What was the disposition of the case?
       Still pending?   YES

V.   1. Names of parties to this other lawsuit:

       Plaintiff: John D. Justice

       Defendant: Terry King, Executive Director, Saving Grace
              Ministries, Inc.

   2. Court: State Supreme Court, Erie County

   3. Index Number: I-2007-12006

   4. Name of Judge to whom case was assigned: Hon. Thomas P. Franczyk

   5. Approximate Date Action was Filed: October, 2007

   6. What was the disposition of the case?
       Still pending?   YES

VI.  1. Names of parties to this other lawsuit:

    Plaintiff: John D. Justice

    Defendant: The State of New York

    2. Court: New York State Court of Claims

    3. Docket Number: Claim No. 114445

    4. Name of Judge to whom case was assigned: Hon. Michael E. Hudson

    5. Approximate Date Action was Filed: November, 2007

    6. What was the disposition of the case?
       Still pending? YES

VII. 1. Names of parties to this other lawsuit:

    Plaintiff: John D. Justice

    Defendant: Hon. Michael E. Hudson, Judge of the New York State
               Court of Claims

    2. Court: State Supreme Court, Erie County

    3. Index Number: I-2008-3337

    4. Name of Judge to whom case was assigned: Hon. Christopher J. Burns

    5. Approximate Date Action was Filed: March, 2008

    6. What was the disposition of the case?
       Still pending? YES

VIII.  1. Names of parties to this other lawsuit:

    Plaintiff: John D. Justice

    Defendant: None  Administrative Appeal of a parole revocation
              to the New York State Division of Parole

    2. Court: None  Administrative Appeal to the New York State
          Division of Parole

    3. Appeal Number: 07-062-07

    4. Name of Judge to whom case was assigned: not applicable

    5. Approximate Date Action was Filed: July, 2007

    6. What was the disposition of the case?
       Still pending? YES

IX. 1. Names of parties to this other lawsuit:

  Plaintiff: John D. Justice

  Defendant: The State of New York

2. Court: New York State Court of Claims

3. Docket Number: None assigned as of this writing.

4. Name of Judge to whom case was assigned: None assigned as of
   this writing.

5. Approximate Date Action was Filed: April, 2008

6. What was the disposition of the case?

  Still pending?    YES

B. Have you begun any other lawsuits in federal court which relate
  to your imprisonment?    NO

S T A T E M E N T S   O F   C L A I M S

C O U N T    I

1. On September 8, 2005, under color of state law, Richard P. Miraglia,
LCSW, Associate Commissioner of the New York State Office of Mental
Health, applied to State Supreme Court, Erie County, to place your
Plaintiff under a Release Order and Order of Conditions, pursuant to
the New York State Criminal Procedure Law §330.20. Your Plaintiff had
never been subject to any provision of Criminal Procedure Law §330.20,
(hereinafter referred to as CPL §330.20); your Plaintiff satisfied all
obligations to CPL §330.20 on February 27, 1987, per the sentencing
and commitment order of the Hon. Joseph P. McCarthy.


2. In 1992, Richard P. Miraglia (hereinafter referred to as "Miraglia")
assured your Plaintiff's trial counsel, John R. Nuchereno, Esq., that
the New York State Office of Mental Health considered your Plaintiff's
obligations to CPL §330.20 as satisfied. Attorney Nuchereno was
defending your Plaintiff in a retrial of Pl...

10

3. On September 8, 2005, Defendant Miraglia purposely chose to apply, to State Supreme Court, Erie County, for a Release Order and Order of Conditions pursuant to CPL §330.20, because such orders are neither appealable nor reviewable under New York State Law.

4. I was released from prison, to parole supervision on September 9, 2005. Upon the application of Defendant Miraglia, your Plaintiff was placed under the supervision of the New York State Office of Mental Health by an Order of Conditions, pursuant to CPL §330.20, that was granted by State Supreme Court, Erie County, on January 3, 2006. This act by Defendant Miraglia caused your Plaintiff irreparable harm and undue hardship when your Plaintiff was on parole; the New York State Office of Mental Health had goals and jurisidictions that were redundant, competing, and conflicting with those of the New York State Division of Parole. This act by Defendant Miraglia contributed to your Plaintiff's arrest by the New York State Division of Parole for an alleged violation of parole.

5. The constitutional basis for this claim, under 42 USC §1983, is a violation of your Plaintiff's Eighth Amendment rights to be free from cruel and unusual punishment; a violation of your Plaintiff's First Amendment rights to petition the courts for the redress of grievances; a violation of your Plaintiff's Fifth and Sixth Amendment rights to be free from malicious prosecution; failure to protect; and a violation of your Plaintiff's Fourteenth Amendment rights to due process and equal protection under the law.

11

6. Your Plaintiff seeks the relief of one million dollars ($1,000,000) in damages against Defendant Miraglia, and an Order vacating the CPL §330.20 Order of Conditions that Defendant Miraglia obtained in relation to your Plaintiff.

7. Pursuant to 42 USC §1997e(a), exhaustion of administrative remedies is inapplicable to this Count. The events of this Count are not related to prison conditions; the material events of this Count occurred when I was not a prisoner.

## C O U N T    II

1. On September 8, 2005, under color of state law, Richard P. Miraglia, LCSW, Associate Commissioner of the New York State Office of Mental Health, (hereinafter referred to as "Defendant Miraglia"), applied to State Supreme Court, Erie County, to place your Plaintiff under a Release Order and Order of Conditions, pursuant to the New York State Criminal Procedure Law §330.20, (hereinafter referred to as "CPL §330.20").

2. Defendant Miraglia did not include in his application, for the aforementioned Release Order and Order of Conditions:

 A. A written service plan for your Plaintiff's continued treatment.
 B. A detailed statement of the extent to which the New York State Office of Mental Health was to supervise your Plaintiff after release.

These submissions are mandatory for any application for a Release Order and Order of Conditions, pursuant to CPL §330.20(12).

12

3. I was released from prison on September 9, 2005. The aforementioned Order of Conditions was granted on January 3, 2006. This act by Defendant Miraglia caused your Plaintiff irreparable harm and undue hardship. When your Plaintiff was on parole, your Plaintiff was also being supervised by the New York State Office of Mental Health; the Order of Conditions that was obtained by Defendant Miraglia authorized this. The New York State Office of Mental Health had goals, and jurisdictions, that were redundant, competing and conflicting with those of the New York State Division of Parole. This act by Defendant Miraglia contributed to your Plaintiff's arrest by the New York State Division of Parole for an alleged violation of parole.

4. This act by Defendant Miraglia continues to bring your Plaintiff irreparable harm, undue hardship and personal suffering. The aforementioned Order of Conditions is for a period of five years, ending on or about January, 2011. During this time, pursuant to CPL §330.20(12), the Commissioner of the New York State Office of Mental Health, Michael Hogan, is to ensure that I am receiving the services in the written service plan, and that your Plaintiff is complying with such a plan. No such service exists for the Commissioner of the New York State Office of Mental Health to refer to. On any given day, no one knows if your Plaintiff is in compliance with the written service plan and Order of Conditions. Every day your Plaintiff lives with the fear of imminent subjection to a recommitment application, pursuant to CPL §330.20(14), to suffer the deprivation of liberty.

5. The constitutional basis for this claim under 42 USC §1983, is a violation of your Plaintiff's 14th Amendment rights to due process and equal protection under the law; a violation of your Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment, a denial of medical care, and a failure to protect your Plaintiff from the actions of the New York State Division of Parole.

6. The relief sought by your Plaintiff is one million dollars ($1,000,000) in damages from Defendant Miraglia, and an Order vacating the CPL §330.20 Order of Conditions obtained by Defendant Miraglia in relation to your Plaintiff.

7. Pursuant to 42 USC §1997e(a), exhaustion of administrative remedies is inapplicable to this count. The events of this count are not related to prison conditions; the material events of this count occurred when I was not a prisoner.

## C O U N T    III

1. This count is brought on behalf of a class of persons situated similarly to your Plaintiff, pursuant to Rule 23 of the Federal Rules of Civil Procedure, and the principles of diversity.

2. The class for purposes of this count consists of all parolees who have resided at halfway houses owned and operated by Saving Grace Ministries, Inc. This includes parolees who have resided at halfway houses owned and operated by Saving Grace Ministries, Inc., (hereinafter referred to as "Defendant Saving Grace") in the States of New York and Pennsylvania.

3. The number of members in the class is so numerous, that joinder of all members is impracticable. Defendant Terry King, (hereinafter referred to as "Defendant King"), as Executive Director of Saving Grace Ministries, Inc., and Saving Grace Ministries, Inc., while acting under color of state law, have had hundreds, if not thousands, of parolees reside in halfway houses they have owned and operated. There are questions of law and fact common to the class, and your Plaintiff's claims in this count are typical of, and identical to, those of all class members. Your Plaintiff is committed to pursuing the class member's claims, and will fairly and adequately represent the class. Class members have been forced under the threat of parole revocation and/or a refusal of parole release from prison to accept residence at Saving Grace halfway houses, and have been coerced under the same scheme to participate in Evangelical Christian activities against their will. Because of the serious constitutional violations, and because the Defendants in this count have violated the constitutional rights of the class members in the same way, and because of the number of class members, a class action is superior to the individual litigation of the class member's claims.

4. Defendant Saving Grace, and Defendant King, contract with the New York State Division of Parole to house and supervise parolees. Class members are parolees who have been determined, by the New York State Division of Parole, to be in need of a transitional residence or program upon release from prison to parole supervision. This determination is made by the New York State Division of Parole before prisoners are released from prison. Residence at Defendant Saving Grace halfway

houses is made a part of a prisoner's conditions of release; once
the New York State Division of Parole has incorporated, into a
prisoner's proposed conditions of release, a stipulation that the
prisoner must reside at a Saving Grace halfway house, that prisoner
will not be released from prison until that prisoner accepts residence
at a Saving Grace halfway house. Also, while at any time on parole,
under the supervison of the New York State Division of Parole, it may
be determined by the New York State Division of Parole that a parolee
is in need of a transitional residence or program. Those parolees
can be required by the New York State Division of Parole to reside at
a Saving Grace halfway house in lieu of being arrested for alleged
parole violations. In other words, prisoners are forced to accept
residence at a Saving Grace halfway house, or suffer the alternative
of remaining incarcerated. Parolees are forced to accept residence
at a Saving Grace halfway house, or suffer the deprivation of liberty.

5. During their residence at Saving Grace halfway houses, class
members are forced to participate in Evangelical Christian activities,
as these activities are mandated by Defendants King and Saving Grace.
If a class member refused to participate, even upon the grounds
that Evangelical Chrisitianity is not their religious belief, those
class members would be reported to the New York State Division of Parole,
by Defendant King or his employees, for alleged violations of parole.
The New York State Division of Parole would then arrest the class
member, and process those class members through the parole revocation
protocol. Often, this would result in parole violations that totalled
years in penalties for the class member.

6. Class members who objected to participating in the Evangelical
Christian activities, at Saving Grace halfway houses, lived in constant
fear that the Defendant King, and his employees, would report them
to the New York State Division of Parole for alleged parole violations.
Class members were subjected to a life of fear, humiliation, heightened
anxiety, and depression. Class members who objected to participating
in these Evangelical Christian activities were also subject to
discrimination while residing at Saving Grace halfway houses. This
discrimination included unfavorable reports made by Defendant King,
and his employees, to the New York State Division of Parole that
resulted in:longer stays at Saving Grace halfway houses; denials of
requests to seek employment; denials of requests to seek drivers
licenses; less favorable living arrangements within Saving Grace
halfway houses; less privileges within Saving Grace halfway houses;
and even a reduction in food rations within Saving Grace halfway
houses. Those residents who professed to be Evangelical Christian
received favorable treatment, including the excusal of direct violations
of parole,          such as crack cocaine use, alcohol use on the
premises of Saving Grace halfway houses, thieving from residents of
Saving Grace halfway houses and committing  homosexual acts on the
premises of Saving Grace halfway houses.


7. The following event in relation to your Plaintiff is typical of
the class member experience:

17

On September 9, 2005, under the threat of not being released from
prison, your Plaintiff signed the conditions of release demanded
by the New York State Division of Parole; your Plaintiff did so
while residing as a prisoner at Wende Correctional Facility at Alden,
New York. That same day, your Plaintiff was brought by the New York
State Division of Parole to Grace House, a halfway house owned and
operated by Defendant Saving Grace. Grace House is located at 1932
Bailey Avenue, Buffalo, New York  14211. Under threat of parole revocation,
Defendant King coerced your Plaintiff to sign the "Inmate/Parolee
Contract". This contract compelled your Plaintiff, under the continued
and ongoing threat of parole revocation, to reside at Grace House for
a period of ninety (90) days to one year. Defendant King explained
to your Plaintiff that his word held the same authority as ▄▄
that of a Parole Officer from the New York State Division of Parole.
Defendant King told your Plaintiff that it was mandatory for your
Plaintiff to attend, and participate in, an Evangelical Christian
Bible study group called "The START Program". Defendant King told
your Plaintiff that he would report your Plaintiff to the New York
State Division of Parole for a parole violation, if your Plaintiff
did not attend and participate in "The START Program". From the
period of September 9, 2005, until August 7, 2006, Defendant King
coerced your Plaintiff, under the threat of parole revocation, to
attend another Evangelical Christian Bible study at Grace House,
held on Thursday nights./From the period of September 9, 2005, to
August 7, 2006, Defendant King coerced your Plaintiff, under the
threat of parole revocation, to attend Christian worship services
at Evangel Church in Williamsville, New York. From the period of
September 9, 2005, until August 7, 2006, Defendant King coerced your

18

Plaintiff, under the threat of parole revocation, to participate
in Evangelical Chrisitian activities at sundry locations in, and
around, Buffalo, New York.

8. Your Plaintiff repeatedly complained to Defendant King that
your Plaintiff was not Christian, did not believe in his god,
and that participation in these activities made your Plaintiff
uncomfortable and was contributing to your Plaintiff's relapse into
clinical depression. Defendant King coerced your Plaintiff into
silence by threatening to have your Plaintiff's parole revoked if
your Plaintiff complained .

9. Your Plaintiff lived in continual fear, while residing at Grace House,
that Defendant King would report your Plaintiff to the New York State
Division of Parole, for an alleged parole violation, because your
Plaintiff objected to being forced to participate in Evangelical
Christian activities at Grace House. Your Plaintiff underwent personal
suffering from the continued fear, including depression, a heightened
anxiety, loss of sleep, and mistrust of others. Your Plaintiff suffered
discrimination while at Grace House, as Defendant King provided
unfavorable reports to the New York State Division of Parole about
your Plaintiff, because your Plaintiff objected to being forced to
participate in the Evangelical Christian activities at Grace House.

10. Upon information and belief, Defendants King and Saving Grace
contract with the State of Pennsylvania, to house and supervise
parolees, in the same manner Defendants King and Saving Grace contract
with the State of New York, (as described in this count, above).
Upon information and belief, Defendants King and Saving Grace contract,
to house and supervise Pennsylvania parolees,with the parole system,
(or the equivalent), as it is operated by the State of Pennsylvania.
Class members include parolees who have resided in halfway houses
operated by Saving Grace in the State of Pennsylvania.

11. The constitutional basis for this claim under 42 USC §1983, is the
violation of the class member's First Amendment right to freedom of
religion, freedom of speech, and the right to petition the court for
the redress of grievances. Your Plaintiff's First Amendment rights
have been violated by Defendants King and Saving Grace in this manner,
and is typical of the class member experience.


12. The relief sought by your Plaintiff is one million dollars
($1,000,000) in damages each from Defendants King and Saving Grace,
and is representative of a typical class claim. Your Plaintiff also
seeks an Order from the Court to dissolve Saving Grace Ministries, Inc.,
to permanently prevent the continued violation of the rights outlined
in the United States Constitution. This Order of dissolution is
sought to encompass Saving Grace Ministries, Inc., in any state
where Saving Grace operates; currently, Saving Grace Ministries, Inc.,
operates halfway houses in the States of New York and Pennsylvania.


13. Pursuant to 42 USC §1997e(a), exhaustion of administrative remedies
is inapplicable to this count. The events of this count are not
related to prison conditions.

20

### C O U N T      IV

1. This count is brought on behalf of a class of persons situated similarly to your Plaintiff, pursuant to Rule 23 of the Federal Rules of Civil Procedure, and the principles of diversity.

2. The class for purposes of this count consist of all parolees who have resided at halfway houses owned and operated by Saving Grace Ministries, Inc. This includes parolees who have resided at halfway houses owned and operated by Saving Grace Ministries, Inc., ("Saving Grace"), in the States of New York and Pennsylvania.

3. The number of members in the class is so numerous, that joinder of all members is impracticable. Defendant Terry King, (hereinafter referred to as "Defendant King"), as Executive Director of Saving Grace Ministries, Inc., and Saving Grace Ministries, Inc., while acting under color of state law, have had hundreds, if not thousands, of parolees reside in halfway houses they have owned and operated. There are questions of law and fact common to the class, and your Plaintiff's claims in this count are typical of, and identical to, those of all class members. Your Plaintiff is committed to pursuing the class member's claims, and will fairly and adequately represent the class. Class members have been forced, under the threat of parole revocation and/or a refusal of parole release from prison, to accept residence at Saving Grace halfway houses, and have been coerced under the same scheme to accept residence in these halfway houses that do

not provide the mental health services necessary for parolees with
psychiatric needs. Because of the serious constitutional violations,
and because the Defendants in this count have violated the
constitutional rights of the class members in the same way, and
because of the number of class members, a class action is superior
to the individual litigation of the class member's claims.

4. Defendant Saving Grace, and Defendant King, contract with the New
York State Division of Parole to house and supervise parolees. Class
members are parolees who have been determined, by the New York State
Division of Parole, to be in need of a transitional residence or
program upon release from prison to parole supervision. This determination
is made by the New York State Division of Parole before prisoners are
released from prison. Residence at Defendant Saving Grace halfway
houses is made a part of a prisoner's conditions of release; once
the New York State Division of Parole has incorporated, into a
prisoner's proposed conditions of release, a stipulation that the
prisoner must reside at a Saving Grace halfway house, that prisoner
will not be released from prison until that prisoner accepts residence
at a Saving Grace halfway house. Also, while at any time on parole,
under the supervision of the New York Division of Parole, it may be
determined by the New York State Division of Parole that a parolee
is in need of a transitional residence or program. Those parolees
can be required by the New York State Divison of Parole to reside
at a Saving Grace halfway house in lieu of being arrested for alleged
parole violations. In other words, prisoners are forced to accept
residence at a Saving Grace halfway house, or suffer the alternative

or remaining incarcerated. Parolees are forced to accept residence
at a Saving Grace halfway house, or suffer the deprivation of liberty.

5. During their residence at Saving Grace halfway houses, class members
are forced to live in an environment that lacks mental health
services. Class members include parolees with serious psychiatric
illnesses, and court ordered mental health treatment. The New York
State Division of Parole contracts with Saving Grace, either under
New York State Executive Law section 259(2) or section 259-a(8), or
both. However, Saving Grace Ministries, Inc., is not a licensed New
York State Office of Mental Health care provider. Class members include
parolees who have served lengthy periods of incarceration while
receiving psychiatric care from the New York State Office of Mental
Health at the highest service level possible. Class members include
parolees who are prescribed powerful psychotropic medications; such
class members are given their medications, while residing at Saving
Grace halfway houses, by Saving Grace staff who are not trained  or
qualified to dispense these medications (often, such Saving Grace
staff are merely felons themselves, even taking psychotropic medications
for their own mental illnesses). Class members include parolees forced
to reside at Saving Grace halfway houses, who have suffered relapses
into mental illness on account of the unsanitary, dangerous, and
unsupervised living conditions present at Saving Grace halfway houses.
Class members include parolees forced to reside at Saving Grace
halfway houses, and have been arrested by the New York State Division
of Parole for suffering from mental illnesses while residing at Saving

Grace halfway houses.   Class members have been forced to reside at
Saving Grace halfway houses, while Saving Grace halfway houses lack
mental health services.

6. The following event is relation to your Plaintiff is typical of
the class member experience:

On September 9, 2005, your Plaintiff was forced to reside at Grace House,
a halfway house owned and operated by Defendants Saving Grace and
Terry King. Defendant King forced your Plaintiff to sign the "Inmate/
Parolee Contract" under threat of parole revocation. The nature of this
experience is described in Count III, above. Saving Grace Ministries, Inc.,
is not a licensed New York State Office of Mental Health care provider.
Your Plaintiff is a psychiatric patient supervised by the New York
State Office of Mental Health, pursuant to a court order under the
New York Criminal Procedure Law section 330.20. Continuously, from
September 9, 2005, until August 7, 2006, your Plaintiff received no
mental health services while residing in Grace House. Grace House is
located at 1932 Bailey Avenue, Buffalo, New York 14211. No staff from
the New York State Office of Mental Health were ever on site at Grace
House. By virtue of unsanitary, dangerous and unsupervised conditions
at Grace House, your Plaintiff relapsed into depression while residing
at Grace House. Your Plaintiff's personal suffering, brought about by
the conditions at Grace House, were exacerbated by the lack of mental
health services on the premises of Grace House. Your Plaintiff regularly
alerted Defendant King to the fact that the conditions at Grace House
were causing your Plaintiff to relapse into depression. Instead of

providing your Plaintiff with the needed mental health treatment,
Defendant  King had your Plaintiff arrested by the New York State
Division of Parole for an alleged parole violation on August 7, 2006.


7. It was common for Defendant King, and his employees, to have parolees
with psychiatric problems arrested by the New York State Division of
Parole or the Buffalo Police Department. Class members are in danger
of being arrested, at Saving Grace halfway houses, for psychiatric
illnesses, because Saving Grace halfway houses provide no on-site mental
health treatment. It is more expedient for Defendants King and Saving
Grace to have class members arrested for alleged parole violations, than
to provide mental health treatment at Saving Grace halfway houses.


8. Upon information and belief, Defendants King and Saving Grace
contract with the State of Pennsylvania, to house and supervise
parolees, in the same manner Defendants King and Saving Grace contract
with the State of New York to house and supervise parolees, (as
described in Count III, above). Upon information and belief, Defendants
King and Saving Grace contract, to house and supervise Pennsylvania
parolees, with the parole system, (or the equivalent), as it is operated
by the State of Pennsylvania. Class members include parolees who have
resided in halfway houses operated by Saving Grace in the State of
Pennsylvania.


9. The constitutional basis for this claim under 42 USC §1983 is the
violation of your Plaintiff's, and the class member's, 14th Amendment
rights to due process and equal protection under the law, the violation

of your Plaintiff's, and the class member's, Eighth Amendment right to be free from cruel and unusual punishment, a violation of your Plaintiff's, and the class member's, Fifth and Sixth Amendment rights to be free from false arrest, a failure to protect, and denial of medical treatment.

10. The relief sought by your Plaintiff is one million dollars in damages, ($1,000,000) each from Defendants King and Saving Grace, and is representative of a typical class claim. Your Plaintiff also seeks an Order from the Court to dissolve Saving Grace Ministries, Inc., to permanently prevent the continued violation of the rights outlined in the United States Constitution. This order of dissolution is sought to encompass Saving Grace Ministries, Inc., in any State where Saving Grace Ministries, Inc., operates; currently, Saving Grace Ministries, Inc., operates halfway houses in the States of New York and Pennsylvania.

11. Pursuant to 42 USC §1983e(a), exhaustion of administrative remedies is inapplicable to this count. The events in this count are not related to prison conditions.

## C O U N T    V

1. On, and after, September 9, 2005, through August 7, 2006, during this continuous period, the Defendants in this count acted with deliberate indifference to the serious pyschiatric needs of your Plaintiff, while your Plaintiff was on parole and residing at Grace House; Grace House is a halfway house owned and operated by Saving Grace Ministries, Inc., and

is located at 1932 Bailey Avenue, Buffalo, New York  14211. During the
course of these events, your Plaintiff was reporting to the Buffalo Area
Parole Office, located at 125 Main Street, Buffalo, New York  14203.
Your Plaintiff, during the course of these events, was an outpatient
of the Butler Clinic, located on the grounds of the Buffalo Psychiatric
Center, 400 Forest Avenue, Buffalo, New York  14213. During the
course of these events, all of the Defendants in this count were acting
under the color of state law.

2. On September 9, 2005, New York State Parole Officers Ken Wilson,
(hereinafter referred to as "Defendant Wilson"), and Charles Sears,
(hereinafter referred to as "Defendant Sears"), delivered your Plaintiff
to Grace House, under the threat of parole revocation. Your Plaintiff,
as a pyschiatric patient under the care of the New York State Office of
Mental Health, pursuant to New York State Criminal Procedure Law
§330.20, was forced by Defendants Wilson and Sears, to reside in a
facility that was not licensed as a care provider by the New York State
Office of Mental Health.

3. On October 27, 2005, Dr. Arvind Samant, (hereinafter referred to as
"Defendant Samant"), diagnosed your Plaintiff as suffering from
"Paranoid Schizophrenia, in full remission". There was never any
evidence that your Plaintiff suffered from the pscyhiatric illness of
Paranoid Schizophrenia. At the very same time, the Commissioner of the
New York State Office of Mental Health was petitioning State Supreme
Court, Erie County, for a Release Order and Order of Conditions,

pursuant to New York Criminal Procedure Law §330.20 in relation to your
Plaintiff, based on a diagnosis of major depression. The Order of
Conditions granted by State Supreme Court, Erie County, was based $ON$
Plaintiff's diagnosis of major depression. Because no written service
plan was included in the Commissioner's application to State Supreme
Court, as outlined in Count II, above, Defendant Samant, and the other
Defendants from the Butler Clinic, described below, were treating your
Plaintiff for paranoid schizophrenia for the continuous period of time
described in this Count, above. Your Plaintiff was never treated for
major depression by the Defendants in this Count, in full contradiction
of the Physician's Affidavit that supported the application for the
Order of Conditions. Defendant Samant was your Plaintiff's treating
psychiatrist at the Butler Clinic.

4. On November 15, 2005, Brenda Martin, Social Worker at the Butler
Clinic, (hereinafter referred to as "Defendant Martin"), did not
properly act upon your Plaintiff's complaint of depression. Defendant
Martin was your Plaintiff's social worker at the Butler Clinic.
Defendant Martin did not properly act upon your Plaintiff's complaints
of depression on the following dates: December 15, 2005; April 13, 2006;
May 24, 2006; June 7, 2006; June 21, 2006; July 5, 2006; July 18, 2006;
July 19, 2006; August 2, 2006; and August 7, 2006. These complaints were
made, by your Plaintiff, to Defendant Martin, at the Butler Clinic.
Defendant Martin was your Plaintiff's primary care provider under the
CPL §330.20 Order of Conditions.

5. On March 1, 2006, Kim Karalus, (hereinafter referred to as "Defendant Karalus"), was Supervisor at the Butler Clinic, and did not properly act upon your Plaintiff's complaint of depression. Defendant Karalus did not properly act upon your Plaintiff's complaints of depression on July 19, 2006, and on August 7, 2006. These complaints were made, by your Plaintiff, to Defendant Karalus, at the Butler Clinic. Defendant Karalus was responsible for monitoring your Plaintiff's compliance with the CPL §330.20 Order of Conditions.

6. On July 25, 2006, Defendant Samant did not properly act upon your Plaintiff's complaint of depression. Your Plaintiff made this complaint, to Defendant Samant, at the Butler Clinic.

7. On August 1, 2006, KC Sharma, (hereinafter referred to as "Defendant Sharma"), was Forensic Manager at the Buffalo Psychiatric Center. Defendant Sharma, on this date, withheld specific clinical information from a Forensic Committee assigned to determine your Plaintiff's request to leave Grace House and live independently. Defendant Sharma had received complaints from Defendant King, operator of Grace House, that your Plaintiff was severely depressed and needed to be transitioned from Grace House. This left the Forensic Committee that your Plaintiff's residence at Grace House was a suitable living arrangement for your Plaintiff. Absent written service plan, and a detailed statement as to the extent your Plaintiff was to be supervised, Defendant Sharma, with deliberate indifference to the serious psychiatric needs of your Plaintiff, violated your Plaintiff's constitutional rights. Defendant Sharma did this at the Butler Clinic.

8. On June 6, 2006, and July 13, 2006, Defendant Wilson did not properly act upon information that your Plaintiff was depressed. Defendant Wilson did this at the Buffalo Area Parole Office.

9. On August 4, 5, and 6, Defendants Wilson, Sharma and Martin failed to properly coordinate the mental health services that were owed to your Plaintiff, and left your Plaintiff residing at Grace House. The Defendants had actual notice that Grace House was causing your Plaintiff's depression, and they deliberately failed to act. The Defendants did this at the Butler Clinic, and at the Buffalo Area Parole Office.

10. On August 7, 2006, Defendants Wilson and Sears arrested your Plaintiff at Grace House, for an alleged parole violation. They unilaterally removed your Plaintiff from the jurisdiction of the New York State Office of Mental Health. Defendants Wilson and Sears arrested your Plaintiff because your Plaintiff suffers from mental illness. The Defendants deliberately neglected the psychiatric needs of your Plaintiff.

11. On, and after, August 1, 2006, Dr. Jeffrey Grace, (hereinafter referred to as "Defendant Grace"), was Clinical Director at Buffalo Psychiatric Center, when Defendant Grace determined that your Plaintiff should reside at Grace House for three to four more years. Defendant Grace made this determination at Buffalo Psychiatric Center, with a deliberate indifference to your Plaintiff's clinical needs.

12. The constitutional basis for this claim under 42 USC §1983, is a
violation of your Plaintiff's 14th Amendment rights to due process
and equal protection under the law, a violation of your Plaintiff's
Eighth Amendment rights to be free from cruel and unusual punishment,
a denial of medical care, a failure to protect, and a violation of
your Plaintiff's Fifth and Sixth Amendment rights to be free from
false arrest.

13. The relief sought by your Plaintiff is one million dollars
($1,000,000.00) from each of the Defendants, (Wilson, Sears, Samant,
Martin, Karalus, Sharma, and Grace).

14. Pursuant to 42 USC §1997e(a), exhaustion of administrative
remedies is not applicable to this count. The events of this count
are not related to prison conditions, and did not occur when I was a
prisoner.

C O U N T    VI

1. This count is brought pursuant to three Federal statutes: 42 USC
§1983, 42 USC §1985, and the Racketeer Influenced Corrupt
Organizations Act under 18 USC § 1964(c).

The claims in this count will be separated under the three applicable
Federal statutes.

THE CLAIM PURSUANT TO 18 USC §1964(c)
THE RACKETEER INFLUENCED CORRUPT ORGANIZATIONS ACT

1.     The alleged unlawful conduct is in violation of 18 USC §§1962
(b), (c) and (d).


2.        A. Defendant Terry King

          Defendant Terry King,(hereinafter referred to as "Defendant
          King"), through bribery, and ties to known organized
          crime figures in the Western New York area, obtained the
          permission from the New York State Division of Parole to
          house and supervise parolees in halfway houses operated
          by Saving Grace Ministries, Inc.; Saving Grace Ministries,
          Inc., was devised by Defendant King, and other Defendants
          in this count, to be the funnel for state contracts that
          were obtained by bribery and fraud. Defendant King has used
          the power and authority of the New York State Division of
          Parole to coerce parolees to sign up for welfare
          benefits; and to coerce parolees to name Defendant King
          as the payee for Social Security Disability benefits, and
          Supplemental Security Income benefits. Defendant King
          has fraudulently applied for, and received, all forms of
          monies from the Federal, State and local governments.
          Defendant King has used the power and authority of the
          New York State Division of Parole to coerce parolees into
          slum apartments owned by donors to Saving Grace Ministries,
          Inc.; and coerced parolees into slum apartments owned by
          current, and former, members of the New York State Division
          of Parole. Defendant King has conspired with other Defendants
          in this count to racketeer parolees into Saving Grace

Ministries halfway houses, and into slum apartments owned
by current, and former, members of the New York State
Division of Parole. Defendant King has used the United
States Mail to further these schemes; and has used the
telephones, and internet, to further such schemes. Defendant
King has committed this illegal conduct, affecting
interstate commerce, as Saving Grace Ministries, Inc.,
(hereinafter referred to as "Saving Grace"), owns halfway
houses in the States of New York and Pennsylvania.
Defendant King has engaged in a kickback and bribery scheme
with other Defendants in this count. The basis of
Defendant King's liability is how he has defrauded your
Plaintiff, and the class members, and has injured the same
in their property and business; your Plaintiff was forced
to render illegal payments to Defendant King, and your
Plaintiff was not allowed to pursue his business as a
journalist and novelist, suffering the loss of intellectual
property to Defendant King while Defendant King was
engaged in these illegal activities. Defendant King is the
Executive Director of Saving Grace Ministires, Inc.

B. Defendant Saving Grace Ministries, Inc.

Defendant Saving Grace Ministries, Inc., (hereinafter
referred to as "Defendant Saving Grace"), was established
in a criminal conspiracy between Defendants in this count.
Defendant Saving Grace was established as a non-profit
corporation specifically to avoid the review processes

of the New York State Legislature, to the personal financial
benefit of Defendants in this count. Defendant Saving
Grace has been the beneficiary of the racketeering activity
of other Defendants in this count. Defendant Saving Grace
has acted with the same illegal intent, and conduct, as
Defendant King, as described above. Defendant Saving Grace
has injured your Plaintiff, and the class members, by
engaging in a pattern of racketeering activities. These
injuries include damage to your Plaintiff's property and
business; your Plaintiff was forced to render illegal payments
to Saving Grace, and was not allowed to pursue his business
as a journalist and novelist, suffering the loss of
intellectual property to Saving Grace, while Defendant Saving
Grace was engaged in these illegal activities. Defendant Saving
Grace has committed this illegal conduct, affecting interstate
commerce, as Saving Grace owns and operates halfway houses
in the States of New York and Pennsylvania.

C. Defendant Eugenio Russi

As a former Buffalo Police Officer, Defendant Eugenio Russi,
(hereinafter referred to as "Defendant Russi), became familiar
with organized crime figures in the Western New York area.
These organized crime figures were also associated with
Defendant King. Defendant Russi was Parole Officer to Defendant
King in 1999, when Defendant King was released from prison.
This circle of organized crime ties led Defendant Russi to
receive bribes from Defendant King, and both Defendants King

and Russi conspired to form Saving Grace Ministries, Inc.,
as a front operation for the misappropriation of state contracts,
and a kickback scheme. As Defendant Russi rose within the
ranks of the New York State Division of Parole, Defendant
Russi was able to steer an increasing number of parolees to
Defendants King and Saving Grace. Defendant Russi would also
use false criteria to force parolees to accept residence at
halfway houses owned by Saving Grace. As the Buffalo Area
Supervisor, Defendant Russi forced your Plaintiff to accept
residence at a halfway house owned and operated by Defendant
Saving Grace. Defendant Russi has violated the rights of class
members in the same racketeering scheme. Defendant Russi has
used his influence within the New York State Division of Parole
to pass through State contracts to Defendant Saving Grace.
Defendant Russi receives kickbacks from Defendant King for
this illegal activity. Defendant Russi has injured your
Plaintiff, and the class members, by forcing the same to
render illegal debts to Defendants King and Saving Grace.
Defendant Russi has committed this illegal conduct, by engaging
with Defendants that affect interstate commerce. Defendant
Russi is now the Regional Supervisor, for Area V, for the New
York State Division of Parole.

D. Defendant Ken Wilson

Defendant Ken Wilson, (hereinafter referred to as "Defendant
Wilson"), has engaged in a bribery and kickback scheme with
other Defendants in this count. Defendant Wilson, as a New

York State Parole Officer, has received bribes and kickbacks
from Defendant King in exchange for bringing in parolees to
halfway houses owned and operated by Defendant Saving Grace.
Defendant Wilson has received such bribes, and kickbacks, in
various forms, including tickets to sporting events, dinners
at local restaurants, and clothing articles from Defendant
King. Defendant Wilson has injured your Plaintiff by forcing
your Plaintiff to render illegal payments, under the threat
of parole revocation, to Defendants King and Saving Grace.
Defendant Wilson has injured class members in the same way.
Defendant Wilson has injured your Plaintiff in his property
and his business, while committing this illegal conduct.
Your Plaintiff has not been allowed to pursue his business
as a journalist and novelist, and has suffered the loss of
intellectual property on account of the illegal activities of
Defendant Wilson. Defendant Wilson has engaged in this illegal
conduct with Defendants who do business across state lines,
thereby affecting interstate commerce. Defendant Wilson is
a Parole Officer employed by the New York State Division of
Parole.

E. Defendant Charles Sears

Defendant Charles Sears, (hereinafter referred to as "Defendant
Sears"), has engaged in a bribery and kickback scheme with
other Defendants in this count. Defendant Sears, as a New
York State Parole Officer, has received bribes and kickbacks
from Defendant King in exchange for bringing in parolees to
halfway houses owned and operated by Defendant Saving Grace.

Defendant Sears has received such bribes, and kickbacks, in various forms, including tickets to sporting events, dinners at local restaurants, and clothing articles from Defendant King. Defendant Sears has injured your Plaintiff by forcing your Plaintiff to render illegal payments, under the threat of parole revocation, to Defendants King and Saving Grace. Defendant Sears has injured class members in the same way. Defendant Sears has injured your Plaintiff in his property and his business, while committing this illegal conduct. Your Plaintiff has not been allowed to pursue his business as a journalist and novelist, and has suffered the loss of intellectual property on account of the illegal activities of Defendant Sears. Defendant Sears has engaged in this illegal conduct with Defendants who do business across state lines, thereby affecting interstate commerce. Defendant Sears is a Parole Officer employed by the New York State Division of Parole.

F. Defendant Tom Tortora

Defendant Tom Tortora, (hereinafter referred to as "Defendant Tortora"), through the influence of other Defendants in this count, has received bribes and kickbacks in the awarding of State contracts to Defendants King and Saving Grace. Defendant Tortora has illegally used his office, as Director of the Program Services Bureau of the New York State Division of Parole, to illegally approve the awarding of State contracts to Defedants King and Saving Grace. Defendants Tortora, King

and Russi have conspired to steer State contracts to Defendants
King and Saving Grace. Defendant Tortora has injured your
Plaintiff, and class members, by aiding Defendant King
in the scheme to bring parolees to halfway houses owned and
operated by Defendant Saving Grace; Defendant Totora has
injured your Plaintiff, and class members, by helping Defendant
King coerce illegal payments from your Plaintiff and class
members. Defendant Tortora has injured your Plaintiff in his
business and property, by helping Defendants King, Russi and
Saving Grace commit these illegal acts in a racketeering
scheme. Defendant Tortora has engaged with Defendants who
do business across state lines, and affect interstate commerce.
Defendant Tortora is employed as the Director of the Program
Services Bureau of the New York State Division of Parole.

3. Alleged wrongdoers, other than the above-listed Defendants

A. Esther Gulyas  As a seasoned tax professional, and owner
of E.G. Tax Service, (in fact, Gulyas is referred to as "The
Tax Lady" on her radio show at WBEN radio), Gulyas has
helped Defendant King shelter assets, and illegal proceeds
from Defendant King's racketeering activities. Gulyas provided
the seed money for Defendant King to start Saving Grace Ministries,
Inc. In exchange, Defendant King has coerced parolees at
Saving Grace halfway houses to accept residence at apartments
owned by Gulyas. Gulyas prepares the personal taxes of Defendant
King every year. Defendant King and Gulyas were business
partners before Defendant King killed Jeffrey Brown in a DWI,

B. <u>Sheryl L. King</u>

As wife to Defendant King, Sheryl King has helped Defendant King shelter assets and proceeds from Defendant King's illegal racketeering activities. Sheryl King is on the Board of Directors for Saving Grace Ministries, Inc., and received that position only because she is the wife of Defendant King.

C. <u>Melvin Taylor</u>

Two time felon Melvin Taylor, as Associate Director of Grace House, a halfway house owned and operated by Saving Grace Ministries, Inc., has helped Defendant King in his illegal racketeering activities. Taylor personally collected from your Plaintiff, and class members, various valuable articles when your Plaintiff and class members were arrested by the New York State Division of Parole, including, but not limited to: cash, jewelry, and electronic goods. Taylor shared the proceeds of these thefts with Defendant King. Taylor also conspired with Defendants King and Russi to provided false testimony against your Plaintiff, and class members, in parole revocation proceedings.

D. <u>Larry Blakely</u>

As caretaker of Grace House, a halfway house owned and operated by Saving Grace Ministries, Inc., has aided Defendant King in the same manner as Melvin Taylor, described above. As a current psychiatric patient, who has been given direct authority over parolees, Blakely is amenable to any suggestion of Defendant King.

E. Richard Erckhardt

As caretaker of Grace House, a halfway house owned and
operated by Defendant Saving Grace, has aided Defendant King
the same manner as Melvin Taylor, as described above in
paragraph 3(c). As a notorious pedophile who had served 18
years in the Alaska Department of Correctional Services for
raping children, Erckhardt was amenable to any suggestion of
Defendant King.

F. Samuel Jackson

As caretaker of Grace House, a halfway house owned and
operated by Defendant Saving Grace, has aided Defendant King
in the same manner as Melvin Taylor, as described above in
paragraph 3(c). As a felon who had served seventeen years
in the New York State Department of Correctional Services,
Jackson was amenable to any suggestion of Defendant King.

G. Kevin Cheeks

As a New York State parolee, Cheeks was employed by Saving
Grace during the time your Plaintiff was a resident at Grace
House (between September 9, 2005 and August 7, 2006). Cheeks
was used by Defendant King as an enforcer at Grace House.
As a current New York State parolee, on parole from a
manslaughter conviction, Cheeks was amenable to any suggestion
of Defendant King, and aided Defendant King in the same manner
as Melvin Taylor, as described in paragraph 3(c), above.

H. Alyssa George

As the Compliance Officer at Saving Grace Ministries, Inc.,
George is responsible for the preparing and filing of
Defendant Saving Grace's applications for grants, fundings,
subsidies, and monies from a variety of governmental and
non-governmental entities. In this capacity, she has aided
Defendants King and Saving Grace in a racketeering enterprise
by falsely applying for these grants, fundings, subsidies
and monies. As an employee of Defendant Saving Grace,
George is amenable to the suggestions of Defendant King.

I. Don Snyder

As a member of the Saving Grace Board of Directors, and as
an employee of the New York State Department of Correctional
Services, (Snyder is Senior Chaplain at Wende Correctional
Facility), Snyder has conspired with Defendant King to
promote the agendas of Defendant Saving Grace within the
New York State Department of Correctional Services. Snyder
has aided Defendant King's efforts to racketeer parolees
into halfway houses owned and operated by Defendant Saving
Grace.

J. Carl Calabrese

As a member of the Saving Grace Board of Directors, and a
former Deputy Erie County Executive, (and currently working
for the lobbying firm "Government Action Professionals"),
Calabrese has conspired with Defendant King to promote
the agendas of Defendant Saving Grace throughout New York

41

State government. Calabrese has aided Defendants King's
efforts to racketeer parolees into halfway houses owned
and operated by Defendant Saving Grace.

K. George B. Alexander

As Chairman of the New York State Division of Parole,
Alexander has the final approval of contracts maintained
by the enterprise New York State Division of Parole.
As head of the Probation Department for the City of Buffalo
(serving over twenty years in that capacity), Alexander
personally knows Defendant King. In this capacity, Alexander
has aided Defendants King and Saving Grace by providing
carte blanche approval of the contracts that the enterprise
New York State Division of Parole maintains with Defendant
Saving Grace.

4. Victims

John D. Justice

Your Plaintiff, John D. Justice, stepped out of the New York
State Department of Correctional Services, on September 9,
2005, into the midst of an ongoing criminal conspiracy
involving the Defendants in this count. This racketeering
enterprise had already been in place since 1999, and
your Plaintiff walked into the midst of this as another
unknowing, unwitting victim.

On September 9, 2005, as a parolee about to be released from
the New York State Department of Correctional Services, your

42

Plaintiff was coerced to accept residence at Grace House,
located at 1932 Bailey Avenue, Buffalo, New York  14211.
Grace House is owned and operated by Defendants King and
Saving Grace. Defendants Saving Grace, King, Russi, Wilson
and Sears conspired to coerce your Plaintiff to accept
residence at Grace House. Your Plaintiff would not have
been released from prison without accepting residence at
Grace House; your Plaintiff would have been arrested by the
New York State Division of Parole if your Plaintiff had
refused to accept residence at Grace House.

In September 2005, your Plaintiff was coerced to sign up
for welfare benefits at the Erie County Department of
Social Services; Defendant King coerced your Plaintiff,
under the threat of parole revocation, at Grace House and
the Rath Building located at 240 Main St., Buffalo, New York
14203. Defendants King and Saving Grace directly benefitted
from this coercion through the enterprise New York State
Division of Parole. All the welfare benefits owed to your
Plaintiff were forcibly rendered to Defendants King and
Saving Grace, including rent and food stamps. Your Plaintiff
was left with a total of $22.50 every two weeks in
emergency benefits (your Plaintiff earns more than that at
this very moment, in prison).

In October 2005, at the Social Security Office located at

186 Exchange Street, Buffalo, New York  14203, Defendant
King coerced your Plaintiff, under the threat of parole
revocation, to name Defendants King and Saving Grace
as your Plaintiff's representative payee for your Plaintiff's
Social Security Disability benefits. Your Plaintiff was
coerced by Defendant King, under the threat of parole
revocation, to render cash payments of $340 per month to
Defendants King and Saving Grace for rent. This happened
from the months of October 2005, until August 2006.
Enterprise New York State Division of Parole had already
contracted with Defendants King and Saving Grace to pay
for your Plaintiff's bed space at Grace House.

At Grace House, between September 9, 2005, until January,
2006, your Plaintiff was coerced, under the threat of
parole revocation, by Defendant King, to participate in
an evangelical Christian bible study group called the
"START Program". This helped Defendants King and Saving
Grace to qualify for monies from the Federal Office of
Faith Based Initiatives.

From December 2005, until August 2006, Defendant King
personally arranged for your Plaintiff to reside longer
at Grace House. Because Defendant King had manuevered himself
to be your Plaintiff's representative payee, your Plaintiff
was coerced, under the threat of parole revocation, to

render duplicative cash rent payments to Defendants King and Saving Grace. This occurred at Grace House.

In July 2006, Defendant King, on the premises of Grace House, Defendant King attempted to coerce your Plaintiff to accept residence at an apartment owned by a retired New York State Division of Parole Officer. Because your Plaintiff refused, Defendant King conspired to have your Plaintiff arrested, on any pretense, for alleged parole violations. Defendant King conspired with Defendants, and wrongdoers, named in this count.

In August 2006, Defendants King and Russi conspired to have your Plaintiff arrested on a pretense for alleged violations of parole. Defendant King had discovered that your Plaintiff was collecting evidence concerning the racketeering enterprise in this count. Defendants King and Russi destroyed the electronic data that your Plaintiff was collecting, regarding their conspiracy to commit racketeering. Defendants King and Russi destroyed your Plaintiff's research, and draft copies, of novels that were to be published. This intellectual property was destroyed by Defendants King and Russi, because evidence of the Defendant's racketeering enterprise was interspersed between research and novels.

Defendants Russi and King altered the remaining electronic
data to make it appear that your Plaintiff was dangerous.
Defendants Russi and King used the media to promote this
ruse, and slandered your Plaintiff. This was a deliberate
effort to discredit your Plaintiff's claims concerning the
racketeering enterprise described in this count. These
events occurred at Grace House, and at the residence of
Defendant Russi, and in the city of Buffalo. This occurred
in August 2006 until July 2007.

Defendants Russi and King conspired to render false
testimony at your Plaintiff's Final Parole Revocation
Hearing, in an effort to discredit your Plaintiff's claims
concerning the racketeering enterprise described in this
count. This occurred at the Erie County Correctional
Facility, located on Walden Avenue, in Alden, New York,
during May and June 2007.

## Class Members

The victims of the Defendants number in the hundreds,
possibly as many as two thousand. They include all the
parolees who have resided at halfway houses owned, and
operated, by Defendant Saving Grace in the States of New
York and Pennsylvania.

Class members have been coerced to accept residence at
halfway houses owned and operated by Defendant Saving Grace.
Class members have had to accept residence at these places

to be released from prison. Class members have had to accept residence at these places or have their paroles revoked. Class members have been subjected to falsified criteria to make it appear that they are in need of residence at halfway houses owned and operated by Defendant Saving Grace; the enterprise New York State Division of Parole has been infiltrated by the Defendants in this count, who have falsified class member criteria to further their racketeering scheme.

Class members have been coerced to render illegal payments to Defendants King and Saving Grace, in the forms of welfare and food stamp benefits, duplicative rent payments, and illegal Social Security Disability or Supplemental Security Income payments.

Class members have been coerced to accept residence at apartments owned by friends of Defendant King, donors to Defendant Saving Grace, and members of the New York State Division of Parole and/or the Pennsylvania Division of Parole. This includes current and former members.

5. Description of Racketeering Activity

Predicate Acts

Predicate Act 1

A. Bribery and Bribe receiving, in the second and third degrees. Violations of the New York State Penal Law, §§200.00, 200.03, 200.10, and 200.11.

B. On January 5, 1999, Defendant King was released from the New York State Department of Correctional Services, (DOCS),

to parole supervision under the New York State Division of Parole. Defendant Russi was Parole Officer to Defendant King. Defendants King and Russi had mutual friends, and acquaintances, in the Buffalo area, some connected to organized crime. On account of these relationships, Defendant King presented Defendant Russi with the plan to commit racketeering activities through the enterprise New York State Division of Parole. Between January 5, 1999, and September 10, 1999, Defendant King offered bribes to Defendant Russi; Defendant Russi accepted these bribes. In exchange, Defendant Russi agreed to use his position as a New York State Parole Officer, and decorated ex-Buffalo Police Officer, to further Defendant King's plan to racketeer. Defendant Russi arranged for the quick processing, and approval, within the enterprise New York State Division of Parole, of the plans to use Defendant Saving Grace in furtherance of Defendant King's plan to racketeer. Bribe money from Defendant King was passed along to Defendant Tom Tortora at the Program Services Bureau of the New York State Division of Parole. Defendant Tortora accepted these bribes, and agreed to use his influence, within the enterprise New York State Divison of Parole (hereinafter referred to as "DOP"), to gain the quick approval, and processing, of Defendant King's plan to use Defendant Saving Grace in furtherance of a scheme to racketeer. Enterprise DOP gained the benefit of having more places to send parolees to be supervised by the DOP.

C. FRCP 9(b) does not apply to this count.

D. There have been no criminal convictions for the violations in this predicate act.

E. There have been no judgements in civil litigation from this
predicate act.

Predicate Act 2

A. Mail Fraud, a violation of 18 USC §1341.

B and C. (In satisfaction of Federal Rules of Civil Procedure 9(b),
wherein "circumstances constituting fraud or mistake shall be
stated with particularity").

On September 14, 1999, Defendant King used the United States Postal
Service to send a "Certificate of Incorporation of Saving Grace
Ministries Under Section 402 of the Not-for-Profit Corporation
Law", (hereinafter referred to as the "Certificate of Incorporation").
Defendant King sent this Certificate of Incorporation to the New
York Secretary of State, at the Department of State, 41 State Street,
Albany, New York  12231. Defendant King mailed this Certificate of
Incorporation from a Post Office in Williamsville, New York, with
the return address: "In care of Evangel Assembly of God, 1800
Maple Road, Williamsville, New York  14221". The Certificate of
Incorporation fraudulently misrepresented the nature of Defendant
Saving Grace Ministries, Inc.

Section 3(a) of the Certificate of Incorporation states that the
purpose for which Defendant Saving Grace was formed are: "to
assist individuals who are incarcerated, or who have been released
from correctional facilities, in their transition to community life
through counseling, socialization, religious training, practical
assistance, job training, job placement and residential and other
programs".

This was a misrepresentation to the New York Secretary of State,
as Defendant Saving Grace was formed for the purpose of aiding
the enterprise New York State Division of Parole, to the personal
financial benefit of Defendant King, and other Defendants in this
count. The enterprise New York State Division of Parole was, (and
still is), in need of halfway houses to place parolees who have
been released from the New York State Department of Correctional
Services; Defendant King took advantage of this need, and formed
Defendant Saving Grace by making the misrepresentation of the
Certificate of Incorporation to the New York Secretary of State.

Section 3(b) of the Certificate of Incorporation states that the
purpose for which Defendant Saving Grace was formed are: "to assist
the families of prisoners and former prisoners". This was a
misrepresentation to the New York Secretary of State, as Defendant
King formed Defendant Saving Grace to assist the enterprise New York
State Division of Parole, to the personal financial benefit of the
Defendants in this count. In actual practice, Defendant Saving
Grace serves the needs of the enterprise New York State Division of
Parole, and does not truly assist the families of prisoners and
former prisoners.

Section 3(c) of the Certificate of Incorporation states that the
purpose for which Defendant Saving Grace was formed are: "to
promote and engage in efforts, including, without limitation, rallies
published articles, audio and video tapes and speeches, to influence
youth and others to follow the principles of the gospel of Jesus
Christ and to avoid and denounce criminal behavior".